IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DEMONTRELL MILLER, § | | |
|       Petitioner, § | | |
| § | | |
| v. § | No. 6:15-cv-00535-MAC-ZJH | |
| § | *CAPITAL CASE* | |
| LORIE DAVIS, § | | |
| Director, Texas Department § | | |
| of Criminal Justice, § | | |
| Correctional Institutions Division, § | | |
|       Respondent. | | |

**RESPONDENT DAVIS'S OBJECTIONS TO THE MAGISTRATE'S RECOMMENDATION TO STAY THESE PROCEEDINGS**

In 2009, Petitioner Demontrell Miller was convicted in Texas state court for the murder of two-year-old Kelynn Pinson. Miller has filed a federal habeas petition challenging his conviction and sentence in this Court pursuant to 28 U.S.C. §§ 2241 & 2254. Docket Entry (DE) 22. Miller also filed an amended petition on April 28, 2017. DE 49. Last year, Miller filed a motion to stay and abate this case so that he may go back to state court to exhaust due process and ineffective-assistance-of-trial-counsel (IATC) claims pertaining to supposed discrepancies in expert testimony over time and cause of death. DE 56. The magistrate has recommended that this motion should be granted and that these proceedings should be stayed. The Director objects to this recommendation because it is premised on several errors of law and fact.

## OBJECTIONS

### I.     The Legal Standard

In *Rhines v. Weber*,[1] the Supreme Court delineated the "limited circumstances" in which a federal habeas court has discretion to "stay and abate" federal habeas proceedings to allow a petitioner to present his unexhausted claims to the state court in the first instance and then to return to federal court for review of his perfected petition. The Supreme Court held that a federal court has the authority to stay a mixed habeas corpus petition and hold it in abeyance so that a petitioner can exhaust his claims in state court without having the one-year statute of limitations expire. *Id.* at 275–76.

Nonetheless, recognizing that stay and abeyance has the potential to undermine the AEDPA's objectives of reducing delay ("particularly in capital cases") and encouraging prisoners to bring all their claims to state court before seeking federal relief, the Court held that "stay and abeyance should be available only in limited circumstances." *Id.* at 277. Specifically, (1) the district court must "determine[] there was good cause for the petitioner's failure to exhaust his claims first in state court," (2) "the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless," (3) "district courts should place reasonable time limits

---

[1]     544 U.S. 269 (2005).

on a petitioner's trip to state court and back," and (4) "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." *Id*. at 277–78.

With regard to this standard, several district courts have noted that the definition of "good cause" remains somewhat vague and has not been settled by the Supreme Court or Fifth Circuit. *See Lopez v. Stephens*, 2016 WL 4126014, *3–*4 (S.D. Tex.), *report and recommendation adopted*, 2016 WL 4131861 (S.D. Tex. 2016); *Sparks v. Stephens*, 2014 WL 113583, *2–*3 (N.D. Tex. 2014). However, there is general recognition that "good cause" under *Rhines* is likely "'analogous to the external 'cause' required to excuse a procedural default.'" *Sparks*, 2014 WL 113583 at *2 (quoting *Brawner v. Epps,* 2008 WL 1745541, *1 (N.D. Miss. 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 755 (1991)); *Lopez*, 2016 WL 4126014 at *3 ("Other courts have looked towards good cause in similar contexts such as procedural default when defining good cause for a stay.").

In the context of procedural default, a showing of cause requires a petitioner to prove that some "external" factor impeded his counsel's efforts to comply with state procedural rules. *Coleman*, 501 U.S. at 753. In *Lopez*, the magistrate agreed that the "cause" requirement under procedural default provided a suitable framework for considering "good cause" under *Rhines* because both "borrow[] similar requirements" and "balance[] similar policy

3

considerations." 2016 WL 4126014 at *4. With that in mind, the court held: "[P]etitioners show good cause when they provide a reasonable excuse that is external to their efforts to comply with the statute of limitations and one that cannot be rationally placed onto them. Further, the excuse must be supported by a showing of merit." *Id.*

## II.   Whether Miller Has Shown "Good Cause"

The above discussion of "good cause" is necessary because the magistrate's recommendation fails to apply these general principles in finding that Miller has shown "good cause."

### A.   First objection

First, the magistrate states: "In the present case, Miller has shown good cause for the failure to exhaust. His new claims were not exhausted because *it did not occur to state habeas counsel to assert them.* The new claims were discovered only through the diligent efforts of federal habeas counsel." DE 64 at 4 (emphasis added). In the context of procedural default, however, state habeas counsel's negligence, errors and omissions have never been held to constitute adequate cause. The Fifth Circuit has routinely rejected this argument. *Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004) ("We have repeatedly held that ineffective assistance of state habeas or post-conviction counsel *cannot* serve as cause for a procedural default.") (emphasis in original); *Beazley v. Johnson,* 242 F.3d 248, 256 (5th Cir. 2001); *Callins v.*

4

*Johnson,* 89 F.3d 210, 212 (5th Cir. 1996) ("Callins contends that his habeas attorney's alleged ineffectiveness constitutes cause. We have already rejected that argument. '[C]ounsel's ineffectiveness will constitute cause only if it is an independent constitutional violation.'" (quoting *Coleman,* 501 U.S. at 755)).

Further, although the ineffectiveness of state habeas counsel can operate as cause to overcome a defaulted IATC claim per *Martinez v. Ryan*[2] and *Trevino v. Thaler,*[3] the Fifth Circuit has refused to extend those Supreme Court holdings to other claims. *See Vasquez v. Stephens,* 597 F. App'x 775, 778 (5th Cir. 2015); *Reed v. Stephens,* 739 F.3d 753, 778 n.16 (5th Cir. 2014); *Wilkins v. Stephens,* 560 F. App'x 299, 306 n.44 (5th Cir. 2014); *In re Sepulvado,* 707 F.3d 550, 554 & n.8 (5th Cir. 2013). More importantly, the Supreme Court substantially limited its holding in *Martinez* when it declined to extend it to claims of ineffective assistance of appellate counsel. *Davila v. Davis*, 137 S. Ct. 2058, 2065–70 (2016). In the present case, Miller does seek to exhaust an IATC claim, but he primarily moves for a stay to exhaust due process claims of alleged prosecutorial misconduct—namely that the State presented false and unreliable scientific evidence. That it simply "did not

---

[2] 566 U.S. 1 (2012).

[3] 133 S. Ct. 1911 (2013).

occur" to state habeas counsel to raise the due process claims, or any other claims, is clearly an inadequate excuse for procedural default purposes.

To the extent a lesser standard for "good cause" applies, this is still not a reasonable excuse. In *Sparks*, for instance, the court acknowledged that the Ninth Circuit has held that the 'good cause" requirement under *Rhines* "is less stringent than the[] 'extraordinary circumstances' standard" governing procedural default. 2014 WL 113583 at *2 (citing *Jackson v. Roe,* 425 F.3d 654, 661–62 (9th Cir. 2005)). Even if accurate, *Sparks* noted that excuses similar to the one employed here—such as a habeas petitioner's impression that counsel had exhausted an unexhausted claim, ignorance of the law, or the strategic omission of certain claims from a habeas application—do not suffice. *Id.* (citing *Wooten v. Kirkland,* 540 F.3d 1019, 1024 (9th Cir. 2008); *Josselyn v. Dennehy,* 475 F.3d 1, 5 (1st Cir. 2007); and *Clements v. Maloney,* 485 F.3d 158, 169–71 (1st Cir. 2007)). It follows that under equitable principles less demanding than those applied to procedural default, a claim of mere omission by state habeas counsel is inadequate because it is neither "reasonable" nor "external." *Cf. Holland v. Florida*, 560 U.S. 631, 651–52 (2010) (noting that "'a garden variety claim of excusable neglect'" does not warrant equitable tolling) (quoting *Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 96 (1990)).

Therefore, given the above precedent, the magistrate erred in finding that Miller's claimed excuse—an attorney omission—demonstrated good cause

under *Rhines*.

### B. Second objection

The second error by the magistrate with respect to "good cause" is that he turns to Texas law for support of his position and supplies a Fifth Circuit case that forecloses his recommendation. The magistrate states:

> In such circumstances, the Texas Court of Criminal Appeals has long recognized that the ineffectiveness of state habeas counsel should not prevent a claim from being heard on the merits. *See, e.g., Ex parte Medina*, 361 S.W.3d 633, 642–643 (Tex. Crim. App. 2011) (per curiam); *Ex parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000); *Ex parte Evans*, 964 S.W.2d 643, 647 (Tex. Crim. App. 1998). Moreover, the Texas Court of Criminal Appeals has allowed prisoners to reopen their habeas applications and raise defaulted claims. *See, e.g., Ex parte Matamoros*, No. WR-50,791-02, 2011 WL 6241295 (Tex. Crim. App. Dec. 14, 2011) (per curiam); *Ex parte Moreno*, 245 S.W.3d 419, 420 (Tex. Crim. App. 2008). The Fifth Circuit has thus observed, *Ex Parte Medina* "allowed a mulligan after finding it was not the client's fault that [state habeas counsel] had filed an incomplete application." *Hall v. Thaler*, 504 F. App'x 269, 284 (5th Cir. 2012).

DE 64 at 4–5. The flaw with this reasoning is two-fold: (1) state law pertaining to the ineffectiveness of habeas counsel has no relevance to demonstrating "good cause" under *Rhines*; only federal precedent applies, and (2) "good cause" does not pertain to how the state court *may* handle a claim or application once it is filed. In other words, this portion of the magistrate's recommendation is based on inapplicable legal principles.

Further, the magistrate's citation to *Hall v. Thaler* is misplaced and actually refutes the basis for his recommendation. In *Hall*, the Fifth Circuit

7

denied the petitioner's motion to stay. 504 F. App'x at 283–84. Hall "stak[ed] his argument" on *Ex parte Medina*, where state habeas counsel "filed an application so deficient that both the trial court and the state agreed the document did not qualify as an actual writ application." *Id.* at 284 (citing *Ex parte Medina*, 361 S.W.3d at 635). As a result, "[t]he court in *Medina* allowed a mulligan after finding it was not the client's fault that [state habeas counsel] had filed an incomplete application." *Id.* Because Hall had the same state habeas attorney as the one in *Medina*, he also believed he was entitled to a stay. The Fifth Circuit held that *Medina* "does not guarantee a do-over for Hall" because the errors in *Medina* were the entire fault of habeas counsel, whereas Hall previously "requested a dismissal" of his state habeas application "despite the court's warning." *Id.*

The circumstances at play in *Medina* are likewise absent here. Although Miller points to state habeas counsel's omission as "good cause," the problem in *Medina* was that habeas counsel's application was so deficient that it did not qualify as an actual application. Miller has not made the same allegation; he has only claimed that state habeas counsel was ineffective for failing to raise certain allegations in the filed application. Importantly, the *Hall* court stated the following:

> Hall cannot point to [state habeas counsel] as "good cause" for the failure to exhaust—not only did Hall choose to dismiss his habeas application in the first instance, but "[*a*]*ttorney ignorance or*

8

> *inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error."*

*Id.* (emphasis added). Therefore, in denying Hall's request for a stay, the Fifth Circuit rejected the same argument advanced by the magistrate here. As a result, *Hall*, if anything, forecloses the grant of a stay, and the magistrate relies on a case that actually refutes his finding of "good cause."

### III. Whether Miller Has Shown that His Claim Is Not Plainly Meritless

In his report and recommendation, the magistrate states:

> With respect to the second prong, it is not clear from the record that Miller's claim is plainly meritless. Miller's conviction is purportedly the product of false scientific evidence that was provided by the testimony of Dr. Wilson. Dr. Wilson has since revised his trial testimony, and his revised testimony, coupled with additional evidence discovered by Miller, would support an argument of actual innocence.

DE 64 at 5. The magistrate, however, arrives at this result by misconstruing the record and trial testimony.

#### A. First objection

In his report and recommendation, the magistrate states:

> At trial, the State initially tried to prove that Kelynn's injuries were inflicted when Kelynn was in the sole care of Miller through the testimony of Dr. Quinton, the Texas state medical examiner who performed Kelynn's autopsy. *At trial, Dr. Quinton's testimony, however, failed to support the State's case.* The State then called Dr. Wilson, who testified to a different cause of death and timing of injury, which did support the State's theory of the case.

9

DE 64 at 2 (emphasis added). This assertion is simply incorrect. Regarding when the injuries were inflicted, Dr. Quinton provided a time range of 3 to 30 hours before Kelynn died. 48 RR 99. He further stated that there was nothing inconsistent with the injuries occurring three hours prior to death. 48 RR 98–99. Although this time range did not exclude other persons as the perpetrator, it also did not exclude Miller. Further, Dr. Quinton testified that the substantial bruising to Kelynn's body would have been visible to caregivers, and Kelynn would have been in extreme pain or discomfort in the hours prior to his death. 48 RR 101–05, 230. Because those who cared for Kelynn in the days before he died did not notice any bruises or Kelynn experiencing discomfort, Dr. Quinton did not believe the injuries could have been inflicted then. 48 RR 110–20, 132, 173. He also testified that Miller's story about Kelynn's behavior before he died was not believable. 48 RR 121, 125–30, 203–04, 224. Dr. Quinton's testimony, therefore, did support the State's case.

The magistrate does not explain why Dr. Quinton's testimony did not support the State's case, and his bare assertion is refuted by the record. The magistrate also disregards the testimony from Dr. Anderson, the emergency room physician who attempted to revive Kelynn. Dr. Anderson's testimony clearly supported the State's case with regard to the timeline, bruising, and Kelynn's level of discomfort or pain. 46A RR 170–297.

## B.      Second objection

The magistrate bases his recommendation in large part on Dr. Wilson's "revision" of his testimony. The Director addressed this issue in her response to Miller's motion to stay. But, in short, Dr. Wilson has stated the following:

> Based on the additional facts I have now learned regarding history and functionality the morning of Kelynn's death, I am revising my trial testimony to state that Kelynn could have been injured by his mother at around 5:00 a.m., and that there is nothing in the pathological findings that is inconsistent with such a scenario.

DE 49, Exhibit 10 at 4–5. These "additional facts" are (1) that Ceola moved Kelynn to the couch early in the morning; (2) Kelynn had apparently wet his bed; (3) Ceola utilized spanking Kelynn as a form of potty training; and (4) Ceola had a reputation for abusing Kelynn. *Id.* Dr. Wilson claimed that, prior to and during trial, he was not informed of this information. *Id.*

However, Dr. Wilson's recollection of the trial is inaccurate. Dr. Watson was told about Ceola's interaction that morning with Kelynn, specifically that she picked him up and moved him to the couch. 52 RR 76. More importantly, Dr. Wilson's revision is based on an erroneous assumption unsupported by any evidence in the record, namely that Ceola beat Kelynn for wetting the bed that morning. The assumption is premised exclusively on statements *from Miller's relatives* that Ceola was abusive toward Kelynn and would beat him if he wet the bed. *See* DE 49, Exhibits 27, 30, 31, & 44. Not only is there no evidence this occurred the morning of Kelynn's death, the evidence in the record actually

11

showed that Kelynn was sleeping normally when Ceola came home at 9:00 a.m. and that *Miller* had a habit of abusing Kelynn.

Again, Dr. Wilson has been provided a theory by Miller's current counsel that Ceola beat Kelynn to death and, accepting this as a viable theory, has revised his timeline, but *not* his scientific opinion. The problem, however, is that the state court record itself, which is presumed to be correct, contains no evidence whatsoever supporting this new theory. Because Dr. Wilson's revision is premised on non-existent evidence, the revision is not reliable.

Moreover, at trial, had Dr. Wilson been asked to speculate whether the scientific evidence was consistent with Ceola beating Kelynn early in the morning, he may have provided testimony consistent with his revision.[4] But the prosecution would have pointed out, rightly so, that there was no evidence to support that conclusion. Indeed, the prosecution would have argued that any suggestion Ceola beat her son was refuted by Miller himself, given his story to police, *unless* his story was false. In other words, pursuit of this theory would have been a classic double-edged sword—the defense would have had to concede that Miller's police statement was a complete fabrication if the theory was viable. At the same time, Dr. Wilson's inclusion of Ceola as a possible

---

[4] This did not occur because, according to Melvin Thompson, Miller's lead trial attorney, Miller told Thompson not to present evidence attempting to cast Ceola as the perpetrator. DE 49, Exhibit 21 at 4.

12

suspect *does not* exclude Miller. Thus, Miller would have remained the primary suspect, and his own defense would have painted him as untruthful and not credible. Accordingly, a defense based on Dr. Wilson's revision would not have worked to Miller's benefit.

### C. Third objection

Next, the magistrate states:

> The State asserts, in response, that the "new evidence is of no moment." Response, page 2. "Dr. Wilson's declaration, in which he adjusts the time frame for Kelynn's injuries, is based on a wholly speculative theory rather than scientific evidence or facts in the record." *Id.* The State's argument, however, goes both ways. Dr. Wilson's testimony at trial, which allegedly provided the proof needed for the conviction, could likewise be described as being based on a wholly speculative theory rather than scientific evidence or facts.

DE 64 at 3-4. This assertion about Dr. Wilson's trial testimony is not accurate. Dr. Wilson's trial opinion that Miller must have committed the offense was based on a combination of the scientific evidence with the historical evidence provided by the trial witnesses. The latter informed the former. Dr. Wilson's revision, on the other hand, is premised on a combination of the scientific evidence and historical evidence that does not exist, or at the very least is not a matter of record. That is why his revision is speculative. The magistrate's failure to recognize this distinction is evident and does not warrant a stay.

Moreover, if Dr. Wilson's trial testimony was speculative, the same must be said of all the other expert witnesses, including Dr. Pustilnik, Miller's

13

expert. This is because all of them provided scientific opinions informed by the historical evidence. The magistrate's interpretation, therefore, renders expert medical testimony essentially meaningless.

### D.   Fourth objection

The magistrate states: "Miller observes that the State is now launching a baseless attack on Dr. Wilson's credibility; nonetheless, the State relied on his testimony to secure the conviction." DE 64 at 4. This is incorrect. The Director does not question Dr. Wilson's credibility or his knowledge of scientific principles as applied to the facts. But his revision is premised on an alleged new fact, not new scientific evidence. That means his revision is valid only to the extent that the underlying new alleged fact is valid. And it is not, which means that his revision is invalid. That is not a comment on his credibility but on the record evidence.

In addition, Dr. Wilson is not a lawyer. Clearly, Miller's attorneys have told him there is "new evidence" and, having no reason to doubt the information nor understanding what constitutes evidence for § 2254 purposes, he has accepted it as true. This does not speak to his credibility as a doctor or witness; it simply means he believes there is new evidence which, in fact, does not exist. Again, the error is not with his decision to offer a revision; the error is that his revision is premised on a fiction.

### E. Fifth objection

Finally, as shown, the magistrate is of the opinion that Miller may have a viable actual-innocence claim. However, that opinion is based on the erroneous belief that (1) Dr. Quinton's testimony did not support the State's case, and (2) Dr. Wilson's revision is meaningful or significant. As shown, neither is true. As a result, a stay is not merited.

### CONCLUSION

The magistrate erred in concluding that Miller has demonstrated "good cause" and that his claims are not "plainly meritless" under *Rhines*. Therefore, the Court should not adopt the recommendation and deny Miller's motion to stay.

    Respectfully submitted,

    KEN PAXTON
    Attorney General of Texas

    JEFFREY C. MATEER
    First Assistant Attorney General

    ADRIENNE McFARLAND
    Deputy Attorney General for
    Criminal Justice

    EDWARD L. MARSHALL
    Chief, Criminal Appeals Division

|  | /s/ Erich Dryden |
|---|---|
|  | *ERICH DRYDEN |
| *Attorney-in-Charge | Assistant Attorney General |
|  | State Bar No. 24008786 |

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
(512) 320-8132 (Fax)

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing Respondent Davis's Objections has been served electronically to Boyd Cloern, counsel for Petitioner, on this the 9th day of February, 2018.

/s/ Erich Dryden
ERICH DRYDEN
Assistant Attorney General